# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| JAMES GOLEMAN, III, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | Case No. CIV-15-972-HE |
| CAROLYN W. COLVIN, acting Commissioner Social Security Administration, | ) |  |
| Defendant. | ) |  |

## REPORT AND RECOMMENDATION

James Goleman (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision that he was not "disabled" under the terms of the Social Security Act.[1] *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). Chief United States District Judge Joe Heaton has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b). Doc. 2.

---

[1] The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

After a careful review of the Administrative Record (AR), the parties' briefs, and the relevant authority, the undersigned recommends the entry of judgment affirming the Commissioner's final decision. *See* 42 U.S.C. § 405(g).

## I. The Commissioner's final decision.[2]

The ALJ applied the prescribed sequential analysis to determine if Plaintiff was disabled within the meaning of the Social Security Act and found that he:

(1) was severely impaired, first, by disorders of the lumbar spine—discogenic and degenerative, second, by major depressive disorder—moderate, with psychotic features, third, by medically induced mood disorder, and fourth, by panic disorder with agoraphobia;

(2) had the residual functional capacity[3] (RFC) to perform work at the light exertional level provided such work did not require him to

    (a) climb, balance, stoop, kneel, crouch, or crawl more than occasionally,

    (b) have a concentrated exposure to vibration,

---

[2] The Commissioner based her final decision on Plaintiff's February 2012 applications for disability insurance benefits and supplemental security income. *See* AR 27.

[3] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

2

> > (c) understand, remember, or carryout more than simple, routine, repetitive instructions,
>
> > (d) make more than simple work-related decisions,
>
> > (d) deal with more than occasional changes in work processes and environment,
>
> > (e) have contact with the general public,
>
> > (f) have more than incidental, superficial work-related type contact with co-workers and supervisors—that is, only brief, cursory, succinct, concise communication relevant to the job being performed,
>
> (3) was able to perform jobs existing in the national economy, and so
>
> (4) was not disabled.

AR 17-27; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the sequential process).

The Social Security Administration's (SSA) Appeals Council found no reason to review the ALJ's decision, which became the Commissioner's final decision. AR 1-6.

## II. Analysis of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and

whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

> **B. Whether, as Plaintiff claims in his single captioned argument for review, the ALJ committed a "mental limitation error."** Doc. 12, at 2.

Plaintiff begins by asserting as his "primary argument" "that the ALJ violated the requirement of Social Security Ruling (S.S.R.) 96-8p that both 'exertional and nonexertional capacity [which includes limitations from [Plaintiff's] severe orthopedic impairments, depression with psychotic features, medically induced mood disorder and panic disorder] must be expressed in terms of work-related functions.'" *Id.* (brackets in original).[4] He

---

[4] Throughout his brief, Plaintiff proffers his opinion regarding the efficacy of the mental limitations imposed by the RFC. *See* Doc. 12. Nonetheless, he fails to point to any objective or opinion-based medical evidence that the ALJ allegedly overlooked and that would support any different or greater limitations. *Id.* In the same vein, he relies extensively on

4

maintains "the ALJ failed to include any proper limitations in the RFC [for his] severe mental health impairments . . . ." *Id.* He acknowledges only that the ALJ limited him to simple work, *id.*, ignoring the myriad restrictions the ALJ actually imposed in formulating his RFC: unable to understand, remember, and carry out more than simple, routine, repetitive instructions; unable to make more than simple work-related decisions; unable to deal with more than occasional changes in work processes and environment; unable to have contact with the general public; and unable to have more than incidental, superficial work-related type contact with the general public. AR 19-20. He also fails to direct the court to any authority suggesting that these restrictions were *not* expressed in terms of work-related functions.[5] *See* Doc. 12.

Plaintiff agrees that, like the ALJ, the state agency consultants found he could perform simple work but submits that in addition, "[t]he agency doctors who received 'great weight' found . . . that there were moderate

---

his subjective complaints. *Id.* at 2-8. But the ALJ found Plaintiff's statements were not entirely credible, AR 21, a finding Plaintiff does not challenge here. *See* Doc. 12.

[5] "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).

5

impairments in social functioning, concentration, persistence and pace (CPP) remembering detailed instructions and markedly limited in dealing with the public. AR 18-20, 430." *Id.* at 2. Plaintiff asks, "Where are those in the ALJ's RFC?" *Id.* Plaintiff's rhetorical inquiry implicates both the Psychiatric Review Technique (PRT), AR 414-27, and the Mental Residual Functional Capacity Assessment (MRFCA), *id.* at 428-31, completed by Cheryl Marsiglia, Ph.D., a state agency consultant.

In her PRT rating of the paragraph B criteria of the adult mental disorders listings, Dr. Marsiglia concluded that Plaintiff had moderate limitations in maintaining social functioning and in maintaining concentration, persistence, and pace. *Id.* at 424. The ALJ gave great weight to these conclusions, and incorporated the restrictions into his step three findings. *Id.* 19, 17-19. Plaintiff contends that "[i]f the agency doctor Marsiglia receives any weight then the RFC should properly reflect the opinion regarding these moderate impairments." Doc. 12, at 3. In other words, and without citing any authority to support his argument, Plaintiff maintains that the ALJ should have also included these limitations in his RFC assessment.

As the ALJ correctly found, AR at 19, the SSA has specifically directed by Ruling that "the limitations identified in the 'paragraph B' criteria are not

a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." *Id. See* SSR 96-8p, 1996 WL 374184, at *4 ("The mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF."). For an ALJ to mechanically include limitations identified at step three in his subsequent assessment of Plaintiff's functional limitations at steps four and five would contravene the Commissioner's directive and procedures. *See Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013) (applying SSR 96-8p).[6]

Plaintiff also claims the ALJ erred by failing to include in his RFC assessment Dr. Marsiglia's MRFCA Section I findings that Plaintiff suffers from a (moderate) limitation in remembering detailed instructions and a

---

[6] "[S]ocial [S]ecurity [R]ulings "do not carry the force and effect of law" but "are entitled to deference . . . because they constitute Social Security Administration interpretations of its own regulations and the statute which it administers." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (internal quotation marks omitted). The Tenth Circuit "defer[s] to social security rulings unless they are plainly erroneous or inconsistent with the Social Security Act." *Id.* (internal quotation marks and brackets omitted).

7

"marked[]"[7] limitation in dealing with the public. Doc. 12, at 2; AR 428-29.

The Tenth Circuit has explained by unpublished opinion that

> [a]ccording to the guidance in the Social Security Administration's Program Operations Manual System (POMS), "Section I [of the Mental RFC Form] is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment[, whereas] Section III—Functional Capacity Assessment, is for recording the mental RFC determination." POMS DI 24510.060 (emphasis omitted), available at https:// secure. ssa. gov/ poms. nsf/ lnx/ 0424510060. "It is in [Section III] that the actual mental RFC assessment is recorded, explaining the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.*

*Sullivan v. Colvin*, 519 F. App'x 985, 989 (10th Cir. 2013) (citations omitted).

The court has also cautioned that "this does not mean that an ALJ can turn a blind eye to moderate Section I limitations . . . ." *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015). "[I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* Here, Plaintiff does not demonstrate any such contradiction. *See* Doc. 12.

---

[7] Dr. Marsiglia actually found that Plaintiff was moderately limited in his ability to interact appropriately with the general public. AR 429.

Plaintiff also maintains his "pain is not in the RFC at all either." Doc. 12, at 4. He claims "[t]here is absolutely no provision in RFC for the pain from his severe orthopedic impairments. The ALJ completely left them out of the RFC which was error." *Id.* To the contrary, the ALJ accounted for Plaintiff's pain by restricting him to work at the *light* exertional level in reliance on the opinion of the state agency consultant who found "[t]his RFC limited by lumbar DDD . . . with chronic back pain." AR 19, 20, 433, 440.

In addition, Plaintiff argues that all the jobs the VE identified in response to the ALJ's hypothetical question "do not even fit the errant 'simple' hypothetical of the ALJ because they are jobs which require 'detailed' work, not the simple work the ALJ errantly required" and "[s]ince these jobs are all 'detailed' or even higher SVP jobs the ALJ said could not be performed, they simply do not fit even the errant RFC." Doc. 12, at 8. Looking past Plaintiff's failure to cite *any* supporting authority for his claim—save his inapt reference to "SVP jobs"—the Commissioner generously responds that "[t]his appears to attack the ALJ's reliance on the jobs identified by the VE, which have a general educational development (GED) level of 2 or 3." Doc. 18, at 12.

The record establishes that in response to the ALJ's hypothetical question about work that would be available in the national economy for an

9

individual who could understand, remember, and carry out simple, routine, repetitive instructions, the VE identified certain work requiring a reasoning level of two. AR 26, 62-66 (citing, in part, DICOT 208.685-014, 1991 WL 671754; DICOT 222.687-022, 1991 WL 672133; DICOT 920.685-026, 1991 WL 687929; DICOT 726.684-050, 1991 WL 679601; and DICOT 726.684-110, 1991 WL 679616). "[L]evel-two reasoning requires the worker to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations.'" *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (first bracket added) (quoting the Dictionary of Occupational Titles).

In *Hackett*, the jobs identified by the VE required a reasoning level of three and the Tenth Circuit remanded the case "to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks"—as with Plaintiff here—"and the level-three reasoning required by the jobs identified as appropriate for her by the VE." *Id*. The court specifically concluded that "level-two reasoning appears more consistent with Plaintiff's RFC." *Id*. The ALJ properly relied on the jobs identified by the VE with a reasoning level of two.

Finally, in what he terms "treating physician error[]," Doc. 12, at 8, Plaintiff submits that "the ALJ gave great weight to treating physician Horton who found [Plaintiff] could only perform sedentary work with no repetitive bending and yet the ALJ found that [Plaintiff] could perform more strenuous light work and left out the no bending completely. AR 20, 349." *Id.* But what the ALJ gave "great weight" to was Dr. Horton's assessment that Plaintiff was "capable of activities with a twenty pound maximum lifting limit," AR 22, a restriction that equates with the Commissioner's definition of light, not sedentary, work, and is consistent with the ALJ's assessment of Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). As to Dr. Horton's "no repetitive bending to lift" restriction, AR 349, the SSA considers "[s]tooping,[8] *kneeling, crouching, and crawling* [as] progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending." SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985). Here, the ALJ specifically restricted Plaintiff to work where he would

---

[8] The SSA recognizes that "[s]ome stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved." SSR 85-15, 1985 WL 56857, at *7.

11

only be called on to stoop (or to kneel, crouch, or crawl) on an occasional basis, not repetitively. AR 19.[9]

Plaintiff fails to demonstrate reversible error on this or any other claim of error.

## III. Recommendation and notice of right to object.

The undersigned recommends the entry of judgment affirming the Commissioner's final decision.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court by May 26, 2016, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

---

[9] The SSA finds that "[i]f a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." SSR 85-15, 1985 WL 56857, at *7. But "because of the lifting required for most medium, heavy, and very heavy jobs, a person must be able to stoop frequently (from one-third to two-thirds of the time); inability to do so would substantially affect the more strenuous portion of the occupational base." *Id.*

ENTERED this 6th day of May, 2016.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE